IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASBURY UNITED METHODIST CHURCH,

                         Plaintiff,                        OPINION AND ORDER

    v.

                                                    09-cv-617-wmc

CITY OF LA CROSSE, MARK SCHLAFER,
STEPHEN MATTY, ANDREA RICHMOND,
AL WAGNER, CHRIS OLSON, JAI JOHNSON,
ERIC SCHMIDT, JOHN SATORY, MIKE
LARSEN, ROBERT SEAQUIST, DOUGLAS
FARMER, AUDREY KADER, TOM SWEENY,
MARILYN WIGDAHL and RICHARD SWANTZ,

                         Defendants.

---

      To no one's credit, the parties have barely managed to make a federal case out of a dispute over $4,039.95 in property taxes on property owned by plaintiff Asbury United Methodist Church at 1818 Redfield Street, La Crosse WI 54601.  This was the amount of tax imposed for 2008, a year in which the property sat mostly unused as it transitioned from use as a tax-exempt parsonage to use as a tax-exempt "hospitality house" for family members and care givers referred by La Crosse hospitals and hospices.  The church filed a claim in state court seeking a refund pursuant to Wis. Stat. § 74.35, on grounds that the 2008 tax violated Wisconsin law.  As a religious association, the church also alleges that imposition of a tax for 2008 violates its right to freedom of religion under the First Amendment of the Constitution and Article I, section 18 of the Wisconsin Constitution.  Plaintiff further alleges that the process used to challenge payment of the allegedly unlawful tax was deficient in violation of its due process rights under the Fourteenth Amendment of the Constitution. Defendants removed to federal court, asserting original jurisdiction over the federal

constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to § 1367(a).  Defendants have now moved for summary judgment on all of plaintiff's claims.  (Dkt. #14.)  For the reasons below, defendants' motion will be granted.

UNDISPUTED FACTS[1]

## I.   Parties

Plaintiff Asbury United Methodist Church is a religious association located at 1818 Redfield Street in La Crosse, Wisconsin.  Asbury Church owns a house and land known for property tax purposes as parcel number 17-40065-90.  Defendant City of La Crosse is a Wisconsin municipal corporation and the subject taxing authority.  Defendant Mark Schlafer is the City Assessor and defendant Stephen Matty is the City Attorney, both are sued in their individual and official capacities.  The remaining thirteen defendants serve as elected members of the City's Common Council, all of whom are also sued in their individual

---

[1] Plaintiff filed a motion for leave to file a sur-reply (dkt. #34), which will be denied. Plaintiff wanted leave to file the sur-reply because it believed future answers to discovery requests "may result in Plaintiff wanting to supplement i[ts] Response."  (Dkt. #34 at 3.) Besides failing to provide the court with sufficiently concrete examples to establish a need to file a sur-reply, plaintiff was on notice that it needed to complete all discovery necessary to make or respond to a summary judgment motion before the dispositive motion deadline. (*See* Preliminary Pretrial Conference Order, dkt. #10, at 2 ("Parties are to undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines.  The fact that the general discovery deadline, set forth below, occurs after the deadlines for filing and briefing dispositive motions is not a ground for requesting an extension of the motion and briefing deadlines.")).  Absent some showing of surprise, unfairness or other extraordinary circumstances, the court will adhere to its general briefing practice with respect to motions for summary judgment.

and official capacities.

## II.   Creation of the Asbury Hospitality House

### A.   The 2007 change in use of Asbury's parsonage

Parcel number 17-40065-90 was acquired by Asbury in 1952.  From 1952 until July 2007, the house was used as a parsonage for Asbury's pastor.  As such, the property had been exempt from any Wisconsin property taxes under Wis. Stat. § 70.11(4) for 55 years.

In July 2007, Scott McMurray was named the new pastor of Asbury Church.  Because McMurray owned a private residence in Onalaska, Wisconsin, and would not reside in the house that had up to that point been used as a parsonage, Ashbury's congregation began studying another use for the house, or, as it came to be know, the "Asbury Hospitality House."  In mid-September 2007, Robert Crader, a parishioner at the church, called the City's assessor, defendant Mark Schlafer, to discuss the church's intent to stop using the house as a parsonage and to instead use it has a hospitality house.  Schlafer informed Crader that a change in the use of the property would alter the tax exempt status of the property.  Schalfer explained the process by which the church could seek a tax exemption for the changed use of the property and told Crader that the church should also consult with the City's Department of Building and Inspections regarding the change in the use to insure that it would be in compliance with any applicable requirements.

A little over a week later, Crader sent Schlafer a letter providing further details about Asbury Hospitality House.  Crader explained that the parsonage was currently unoccupied

and that changing it into a hospitality house would "benefit the community and allow [Asbury] the privilege to serve those in need." (McMurray Aff., dkt. #30, ex. 1.) By changing the house's use from a parsonage to a hospitality house, the church hoped to provide "a guest house for those who have loved ones in either Lutheran or St. Francis hospitals for extended stays and who do not have the financial means to be able to stay in one of the city's motels." (*Id.*) Crader also expressed the church's belief that because the use of the property would be for a church ministry, it would retain its tax exempt status. Shortly thereafter, on October 7, 2007, Asbury's congregation formally approved the change in use of the residence from a parsonage to a hospitality house.

On October 24, 2007, Schlafer sent Crader a letter in response to Asbury's new plans for the house. Schlafer explained that the City's attorney, defendant Stephen Matty, and he had concluded that the "proposed use, though laudable, does not meet the requirements of Chapter 70.11(4), Wis. Stats. for property tax exemption for religious organizations." Schlafer included a property exemption request form with the letter and informed Crader that if Asbury still wanted to seek tax exempt status they should file the form and all pertinent addendums no later than March 1, because the building and land would be assessed for tax purposes as of January 1, 2008.

B.      **Tax exemption sought in 2008 for future Asbury Hospitality House**

On January 1, 2008, the house that had been used as a parsonage remained vacant and unoccupied. Crader submitted a State of Wisconsin Property Tax Exemption Form on

behalf of Asbury on March 1, 2008.  On the form, Crader listed the purpose of the hospitality house as "offer[ing] safe and affordable housing for family members and care givers of persons undergoing treatment at La Crosse hospitals and hospice."  (McMurray Aff., dkt. #30, ex. 3 at 2.)  He described the services provided as "[o]ccupancy in Church parsonage for up to 6 people, or 3 unrelated people.  The hospitality house offers 3 guest bedrooms, shared kitchen, 2 baths, and laundry area with washer and dryer." (*Id.*)  While each guest would be asked for a donation of $10 a night, Crader also noted that "[n]o one will be turned away because of inability to pay." (*Id.*)

Along with the form, Carter provided a letter from a director of service at a local hospital describing the growing need for such a facility, further explanation about how the hospitality house would be run, and documents regarding two similar hospitality houses with tax exempt status in other parts of Wisconsin.

On the same day the tax exemption form was submitted, Crader sent another letter to the City of La Crosse's Assessor Schlafer.  In addition to asking for an extension of the March 1 deadline in which to submit all the proper documentation regarding the request for a tax exemption, Crader noted the following:

> We realize that this [use] may not meet all of the requirements of Chapter 70.11(4), WI Stats., but [we] believe there is precedence in two other organizations located in Wisconsin.  One being Kathy's House in Milwaukee, WI and the other being Ronald McDonald House in Marshfield, WI.  Each are essentially providing the same service that we propose and have received tax exemption. . . .
>
> What we are asking for is most likely a temporary exemption, as future ministers to our church may require a parsonage for their use and the property would then be returned to that status.

5

(Schlafer Aff., dkt. #19, ex. 4.)

Asbury was sent a Notice of Real Estate Assessment on April 25, 2008, regarding the residence and land formerly used as a parsonage. The notice identified the property as "formerly exempt now assessed." (*Id.* ex. 5.)

### C.    Creation of the Asbury Hospitality House

On January 3, 2008, Asbury participated in a City meeting to discuss zoning and planning requirements to be able to use the property in a way that would permit more than three unrelated occupants to live in the house at any one time. Because the property was zoned for only single-family use, it was determined the property would have to be rezoned. About two months later, Asbury's congregation authorized the filing of an Application for Conditional Use Permit with the City. A month after that, the Wisconsin United Methodist Church Conference approved Asbury's decision to convert the parsonage into a hospitality house.

Asbury's application for a conditional use permit was filed two days later, on April 4, 2008, as was its Petition for Change to Chapter 15, Zoning of the Code of Ordinances of the City of La Crosse. In describing the property on the application for conditional use, Crader noted that it was "currently vacant." He went on to note that the proposed use for the property was as a hospitality house. Additionally, Asbury's pastor, Scott McMurray, sent Schlafer a letter on April 21, 2008, supporting the church's petition for rezoning the parsonage "to be used as a church-sponsored ministry as a hospitality house." (McMurray

6

Aff., dkt. #30, ex. 7.)

Asbury's application for a conditional use permit was considered at the May 6, 2008 meeting of the City Council's Committee of the Whole, where Crader was given an opportunity to speak for the church.  The Committee of the Whole determined that the application should be held for 30 days to permit Asbury's neighbors to respond to a May 1, 2008 letter sent to its neighbors advising of the new proposed use for the property.  Crader did not oppose this determination, and advised the Committee that the hospitality house would not be available until August 2008.  Both Asbury's application for a conditional use permit and its petition for rezoning were granted by the City's Common Council on June 12, 2008.

During this same period in March and April 2008, Asbury obtained bids for the completion of plumbing and roofing work.  Construction began in June 2008, was delayed over the summer by inclement weather, and was completed in September 2008.  At that time, the hospitality house opened it doors to the public.


**D.    Asbury's challenge to payment of 2008 property taxes**

Having reached no understanding on an exemption, Asbury Church paid under protest $4,039.95 in 2008 property taxes for Parcel 17-40065-90 on January 29, 2009. Asbury pastor, Scott McMurray, sent a letter to Schlafer on January 29, 2009, explaining that Asbury (1) was appealing the 2008 property tax levied against the church-owned house and (2) hoped to obtain tax exempt status for its hospitality house in 2009.  McMurray

enclosed hospital endorsements and a report on the hospitality house's use in 2008, including a financial report showing the income earned and expenses accrued through the hospitality house.  The next day, the City Clerk received a letter from McMurray requesting that Asbury's appeal of its 2008 property taxes  be put on the City Council's agenda for the March meeting.

McMurray also sent another letter on January 29, 2009, which was addressed to "Mayor and City Council Members of La Crosse."  (Kader Aff., dkt. #18, ex. 2.)  The letter was neither sent to nor served upon the City Clerk.  In the letter, McMurry explained that Asbury was appealing the property tax imposed in 2008 for the vacant house that had been used as a parsonage and that Asbury hoped that the City Council would "revoke the property tax for 2008[.]" (*Id.*)  McMurray provided four reasons in support of Asbury's request: (1) because there were no prior examples to guide Asbury in creation of the hospitality house, "it took considerable time to carefully develop [the] charity in later 2007 and early 2008"; (2) Asbury would have begun creating the hospitality house sooner had it not been for the additional permits and hearings required by the City; (3) paying the 2008 tax created a considerable financial strain on Asbury and could adversely affect the hospitality house's ability to continue to provide temporary housing for those who cannot afford even the $10 suggested donation; and (4) because the property had previously been tax exempt as a parsonage, there would be no loss of tax revenues previously relied upon by the City.  (*Id.*)

The following month, the City Clerk's office sent Asbury written notification that its claim for recovery of unlawful taxes paid would be referred to several of the City's

committees.  Asbury's claim was placed on the Finance and Personnel Committee's agenda for its March 5th meeting, the Committee of the Whole's agenda for its March 10th meeting and the Common Council's agenda for its March 12th meeting.

On March 5, 2009, Schlafer sent the Mayor and Common Council a letter providing his reasons for assessing the property that had been the church's parsonage and imposing a property tax on it.  (Schlafer Aff., dkt. #19, ex. 7.)  Schlafer explained that as of January 1, 2007, the property at issue had been classified as tax exempt under Wis. Stat. § 70.11(4), because it was used for housing the pastor of a religious organization, but the property's use had changed and the property sat vacant as of January 1, 2008.  He further explained that the assessment was proper in 2008 because the property remained vacant until September 2008, when it was first used as a hospitality house.  Since the property was not being used on January 1, 2008 exclusively for an exempt purpose recognized by statute, or within a reasonable time period after January 1, it was subject to tax.

At its March 5, 2009 meeting, the City's Finance and Personnel Committee considered Asbury's claim for recovery of unlawful taxes and heard from Scott McMurray, Lewis Lebakken, Jr., Duane Moore, Robert Crader and Dale Montgomery, all of whom spoke on behalf of Asbury.

At its March 10, 2009 meeting, the Committee of the Whole considered Asbury's claim and heard from McMurray, Lebakken and Crader.  At that meeting, Schlafer explained to the Committee that the property had been vacant and not used for tax exempt purposes as of January 1, 2008.  Crader asked that the Committee consider Asbury's intended use of

the property on January 1, 2008, as opposed to considering its lack of use for any purpose as of that date.  After the meeting, the Committee issued a report adopting an amended resolution to approve Asbury's claim for recovery of unlawful taxes in the amount of $4,039.95.  (Lehrke Aff., dkt. #15, ex. 11.)

At its March 12, 2009 meeting, the City's Common Council considered Asbury's claim and determined to refer the matter for 90 days.  A little less than a month later, on April 6, 2009, James G. Birnbaum notified the City Clerk that he had been retained to represent Asbury.  That same day, Asbury, by its attorney, filed with the City Clerk a document it entitled "Amended Appeal Letter." (*Id.*, ex. 1.)  In the letter, Birnbaum again explained the grounds for the church's claim for recovery of unlawful taxes.  Specifically, Birnbaum stated that the switch from a parsonage to a hospitality house involved a continued use of the residence for "religious purposes."  Attached to the letter was a brochure for the Asbury Hospitality House.

That same day, the church asked the Common Council for reconsideration of the referral of Asbury's claim for recovery of unlawful taxes.  The Common Council added Asbury's request for reconsideration to the agenda of its April 9th meeting.  On the day of the meeting, Asbury's attorney provided the Council members with a letter explaining why Asbury's claim for recovery of unlawful taxes should be approved.  At the meeting, the Council voted to reconsider Asbury's claim and it determined that the claim would be referred to the May meetings of the City's committees.

The Finance and Personnel Committee reconsidered Asbury's claim at its May 7,

2009 meeting.  Asbury's attorney, James Birnbaum, as well as Robert Crader, Susan Corbisier, Mary Callaway and Nancy Danoll, all spoke on behalf of Asbury.  At that meeting, Crader acknowledged that Schlafer had told the church from the beginning that there was a timeline that it would have to meet in order to obtain a tax exemption.  Schlafer also spoke at the meeting, noting that a tax exemption is an exception to the rule that generally property is taxable.  The Committee recommended not adopting the amended resolution approving Asbury's Claim.

The Committee of the Whole re-considered Asbury's claim at its May 12, 2009 meeting, at which it heard from Asbury's attorney, then referred consideration of Asbury's claim to a special meeting scheduled two days later.  Notice of this special meeting was mailed, faxed and posted the next day.  At the special meeting, the Committee considered Asbury's claim and voted to recommend denying the claim.  That same day, May 14, 2009, after a closed session between the Committee of the Whole, the Common Council and City Attorney Stephen Matty, the Common Council adopted the second amended resolution disallowing Asbury's claim for recovery of unlawful taxes.

### E.    Asbury's request for 2009 tax exemption for Asbury Hospitality House

In response to the church's request for an exemption for 2009, City Assessor Schlafer sent a letter to Asbury's attorney in late April requesting additional information, including: (1) the specific statute from Chapter 70 that Asbury was seeking an exemption under; (2) a detailed income and expense report for the hospitality house for 2009; and (3) more

11

detailed information about the use of the hospitality house, such as whether a person's income is considered in deciding whether the person can stay at the house. (Schlafer Aff., dkt. #19, ex. 9.) Asbury's attorney responded to Schlafer's request in written form on May 6, 2009, explaining that Ashbury was seeking an exemption under Wis. Stat. § 70.11(4) as a religious institution using the property for ministry purposes. In addition to attaching a detailed financial report covering January through April 2009, the letter provided additional detail about the use of the hospitality house, including a note that income level was not considered when determining whether a guest could use the house. (*Id.*, ex. 10.)

On June 11, 2009, Schlafer sent Asbury church a letter granting the property tax exempt status as of January 1, 2009. (*Id.*, ex. 11.) Schlafer explained that the exemption was not based on the religious use of the property, but on the use of property to provide a benevolent service to the public. Specifically, Schlafer stated:

> After consideration of all the facts of this matter, I find that the use of the subject property generally meets the intent of the statute as a benevolent service to the general public. The subject property will be exempt from the general property tax as of January 1, 2009. Therefore, to clarify, the request for exemption on the basis that the subject property is used for a religious purpose is denied. In addition, I am requiring that a follow up itemized list of income and expenses for the calendar year 2009 be provided for my review as soon as available next January. I also strongly encourage the continued development of the guest screening criterion to include consideration of true financial needs as a priority.

(*Id.*)

OPINION

Defendants have moved for summary judgment on plaintiff's claims, including its

state law claim for recovery of unlawful taxes.[2]  Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  And "the substantive law ... [governs] which facts are critical and which facts are irrelevant."  *Id.* at 248.

Though all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party, *Baron v. City of Highland Park,* 195 F.3d 333, 338 (7th Cir. 1999), the nonmoving party must "show through specific evidence that a triable issue of fact remains on issues for which [it] bears the burden of proof at trial[;] the evidence submitted in support of [its] position must be sufficiently strong that a jury could reasonably find for [it]."  *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009) (internal quotation omitted).  Because no jury could reasonably find in favor of plaintiff on any of its claims based on the undisputed evidence, defendants are entitled to summary judgment.[3]

---

[2] In the absence of a dispute over choice of law, the court will apply the law of the forum state.  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002).  Here, neither party disputes that Wisconsin law applies, nor could they given that all parties reside here and the dispute arises out of the application of state property tax on a Wisconsin property.

[3] As will be discussed in the next sections, defendants are entitled to summary judgment on plaintiff's federal claims, which would usually mean that the court would not

I.   **Recovery of Unlawful Taxes**

Wisconsin Statute § 74.35 provides the exclusive procedure to obtain a refund on taxes paid on property the payer believes to be exempt by law from taxation.  Plaintiff followed the procedure: (1) it filed its claim for recovery of unlawful 2008 property taxes with the tax authority in January 2009;[4] (2) the City's Common Council disallowed the claim on May 14, 2009; and (3) it filed this lawsuit in state court challenging the payment

---

decide plaintiff's state law claims on the merits, but instead would dismiss those claims without prejudice to be refiled in state court.  This practice is consistent with "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). *See also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.").

A court may, however, depart from "usual practice" and continue to exercise supplemental jurisdiction if the circumstances weigh in favor of such action.  For example, there is no reason to send back to state court "'doomed litigation' that will only be dismissed once it gets their."  *Groce*, 193 F.3d at 502.  In such circumstances, the district court should retain supplemental jurisdiction "because when a state-law claim is clearly without merit, it invades no state interest–on the contrary, it spares overburdened state courts additional work that they do not want or need–for the federal court to dismiss the claim on the merits, rather than invite a further, and futile, round of litigation in the state courts."  *In re Repository Tech., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010) (internal quotation omitted).  Here, because plaintiffs' state law claim to recover unlawful taxes is clearly without merit and the court and the parties have already invested ample time (indeed years) with the facts relating to the state claims, this court retains supplemental jurisdiction over them.

[4] Defendants challenge whether plaintiff properly filed its initial claim under § 74.35(2)(b).  At the time of the filing, however, defendants did not object to the manner in which the claim was filed, they considered the claim at several committee meetings and they issued a decision disallowing the claim.  It is too late in the progression of this claim for defendants to challenge the manner in which the claim was initially filed.

of the taxes in July 2009.[5]

Which brings us to the central issue at hand for plaintiff to survive summary judgment:  whether the record is sufficient to permit a reasonable fact finder to decide that the house and land located on parcel number 17-40065-90 was exempt from taxation in 2008 as property owned by a church or religious association and used exclusively for the purposes of the church or religious association under Wis. Stat. § 70.11(4).  The answer to that question is "no."

"Taxation is the rule, and exemption the exception."  *Dominican Nuns v. City of La Crosse*, 142 Wis. 2d 577, 579, 419 N.W.2d 270, 271 (Wis. App. 1987).  Thus, "the burden of proving entitlement to [a tax] exemption is on the one seeking the exemption.  'To be entitled to tax exemption the taxpayer must bring [itself] within the exact terms of the exemption.'"  *Wauwatosa Avenue United Methodist Church v. City of Wauwatosa*, 2009 WI App 171, ¶7, 321 Wis. 2d 796, 800, 776 N.W.2d 280, 282 (quoting *Sisters of Saint Mary v. City of Madison*, 89 Wis. 2d 372, 379, 278 N.W.2d 814, 817 (1979)).

Plaintiff contends that the property now being used as a hospitality house should have been exempt from property taxes in 2008 under Wis. Stat. § 70.11(4).  That section states in the relevant portion as follows:

Property exempted from general property taxes is:

. . .

_____

[5] Defendants removed this case to federal court in October 2009.  *See* 28 U.S.C. §§ 1331 and 1441.

**(4) Educational, religious and benevolent institutions; women's clubs; historical societies; fraternities; libraries.** (a) Property owned and used exclusively . . . by churches or religious, educational or benevolent associations . . . also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and part of other property owned and used by such associations or churches . . . while such property is not used for profit.

The language in the statute exempting property "used exclusively" by a church or religious association "has been interpreted to require that the primary physical *use* of the property be an exclusively religious one." *Missionaries of Our Lady of La Salette v. Michalski*, 15 Wis. 2d 593, 597, 113 N.W.2d 427, 429 (1962) (emphasis in original). Further, whether the property is used exclusively for a religious purpose is determined as of the time the property is assessed. *See FH Healthcare Dev., Inc. v. City of Wauwatosa*, 2004 WI App 182, ¶36, 176 Wis. 2d 243, 265, 687 N.W.2d 532, 542 (noting that the case law focuses on "the use of the property at the time of assessment").

Property that is vacant and unoccupied at the time of assessment is not exempt. *See, e.g.*, *id.* at ¶¶34-37 (hospital's newly constructed properties not exempt under § 70.11(4m) because vacant and only partially constructed at time of assessment); *Group Health Coop. of Eau Claire v. Wis. Dep't of Revenue*, 229 Wis. 2d 846, 856-58, 601 N.W.2d 1, 7-8 (Wis. App. 1999) (no tax exemption where hospital had purchased land to construct health clinic, but at the time of assessment construction had not commenced and land was vacant); *Dominican Nuns*, 142 Wis. 2d at 581, 419 N.W.2d at 272 ("[W]e have recognized that premises which are 'wholly vacant and unoccupied' do not qualify for exemption under sec. 70.11(4).") (quoting *Wis. Evangelical Lutheran Synod v. City of Prairie du Chien*, 125 Wis. 2d 541, 545 n.3,

16

373 N.W.2d 78, 80 (Wis. App. 1985)).

Under Wisconsin law, property that has yet to begin serving a tax exempt purpose may, however, be exempt if the taxpayer can be considered as "readying" the property for such a purpose.  *See, e.g.*, *Group Health Coop. of Eau Claire*, 229 Wis. 2d at 856-58, 601 N.W.2d at 7-8 (discussing creation of the "readying" rule in *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 320-23, 254 N.W.2d 268, 273-75 (1977), which was ultimately overruled on other grounds by *Burlington Northern Railroad Co. v. City of Superior*, 159 Wis. 2d 434, 464 N.W.2d 643 (1991), where a nursing home not yet operational on the assessment date was, nonetheless, entitled to a tax exemption "because it was 'readying' itself for its benevolent purpose").

There is no dispute that the house located on parcel number 17-40065-90 was vacant and unoccupied on January 1, 2008, when the property was assessed.  In fact, the house was vacant and unoccupied from roughly July 2007, when Ashbury stopped using it as a parsonage, until September 2008, when Asbury began using it again as a hospitality house.  Conceding the house was vacant on January 1, plaintiff contends that it was entitled to a tax exemption under § 70.11(4) because it was "readying" the house for an exclusively religious purpose -- that is, to be used as a hospitality house.

Whether use of the house was ultimately an exclusively religious or benevolent one,[6]

---

[6] In allowing Asbury Hospitality House to claim tax exempt status in 2009, the City Assessor, defendant Schlafer, told Asbury that its use of the house as a hospitality house is an exclusively benevolent, not religious, use.  Asbury disagrees.  Because Asbury obtained the tax exemption it sought in 2009, whether Schlafer allowed the exemption as religious or a benevolent use is largely irrelevant.  Even if the City should have deemed Asbury

the real issue here is whether the house was being used or being readied for such a use as of January 1, 2008. The undisputed facts establish it was not. While Asbury's congregation had agreed on October 7, 2007, that the house could be converted from a parsonage to a hospitality house, the ball did not really start to roll on the project until several months after its assessment. It was not until April 2008 that the Wisconsin United Methodist Church Conference approved the congregation's decision. Further, Asbury did not apply for the necessary zoning and use permits until April 2008, bids for necessary construction were not requested until March and April 2008, actual construction did not begin until June 2008 and the house did not open its doors for use as a hospitality house until September 2008.

Plaintiff contends that any delay in readying the hospitality house was due to the City's requirements regarding zoning and permits. This argument is unpersuasive for several reasons. First, it was plaintiff who waited until April 2008 to seek the necessary permits and rezoning for the hospitality house; this despite the house sitting vacant since July of 2007 and being advised by a city offical back in September of 2007 to look into permitting and rezoning requirements. Second, the whole process -- from filing applications to granting the permits -- took about two months. Finally, at the meeting of the City's Committee of the Whole on May 6, 2008, the church's representative, Robert Crader, told the committee that the hospitality house would not be ready until August 2008. In light of all these facts, no reasonable fact finder could determine that Asbury was readying the house for an exempting

Hospitality House once again exempt based on its new, religious use, it still enjoyed no exemption as of January 1, 2008, since its use as a parsonage had ended some six months before and its use as a hospitality facility only began six months later.

use at the time of assessment.

Contrary to plaintiff's assertion, the current circumstances are not similar to those of the nursing home in *Family Hospital*. The nursing home in *Family Hospital*, 78 Wis. 2d at 323, 254 N.W.2d at 274-74, was fully constructed, equipped and ready to receive its first patient at the time of assessment. The only reason that home remained unused for several months after the assessment was the lack of "a full complement of operating staff." *Id.* The Asbury Hospitality House was not even near the final stages of being ready for use as of the January 1, 2008 assessment. Even if you remove the delays for permitting, Ashbury admits the house would not have been ready to be used as a hospitality house until August 2008.

While plaintiff had begun the process of discovering what actions it needed to take to create the Asbury Hospitality House as of January 1, 2008, it was far from "readying" the former parsonage for that purpose by the assessment date. *See, e.g., Group Health Coop*, 229 Wis. 2d at 857-58, 601 N.W.2d at 7-8 (taxpayer was not "readying" land for tax exempt health center as of the January 1, 1994 assessment even though it had "paid $183,000 for allowing the subdivision, purchase and use of the property; ...conducted an environmental audit of the property; ...recorded utility, parking, sidewalk and driveway easements on the property; ...submitted site and landscape plans to Glendale; and, in December 1993, ...applied for a building permit").

Plaintiff alternatively argues that its property was exempt under § 70.11, because it "was exempt for the previous year and its use, occupancy or ownership did not change in a way that makes it taxable." As already discussed, however, the property's use and occupancy

had changed between 2007, when the property had been exempt as a church-owned parsonage, and 2008, when it was left vacant.

"Tax exemptions are matters of legislative grace and there must be clear evidence that such grace was intended before [courts] will so find in a given case." *Dominican Nuns*, 142 Wis. 2d at 579, 419 N.W.2d at 271.  While the City of La Crosse could have done the gracious thing by extending the tax exemption during the transitioning from parsonage to hospitality house, plaintiff has failed to establish that in 2008 it was legally entitled to such grace regarding parcel number 17-40065-90.  Because the property was vacant and unoccupied at the time of assessment, it was not being exclusively used for a tax exempt purpose at that time, nor for some time thereafter.  As such, the City tax assessment of the property on January 1, 2008, was proper and no reasonable fact finder could determine otherwise.

## II.   <u>Freedom of Religion</u>

Plaintiff also claims that its freedom to exercise its religion was somehow violated when defendants determined that a hospitality house would not be eligible for exemption based on an exclusively religious use as opposed to a benevolent one.  In particular, plaintiff asserts that defendants "overruled Asbury's assertions that the activity of the hospitality house constitutes ministry for the United Methodist Church."  (Plt.'s Br., dkt. #29, at 8.)

Defendants did nothing of the sort.[7]

Defendants simply determined whether the hospitality house fit under the tax exemption in § 70.11(4) for property used exclusively for a religious purpose. While plaintiff argues that this determination required probing into plaintiff's religious practices in violation of its religious freedom, examinations of an organization's activities -- even those of a religious organization -- is not only permissible in the context of deciding an institution's tax exempt status, but it is necessary. *See, e.g., United States v. Dykema*, 666 F.2d 1096, 1102 (7th Cir. 1981) (noting that the IRS had to be permitted to examine the religious activities of an organization because "[i]f such examination were not permitted, it is difficult to see how any church could qualify as a tax-exempt organization for 'religious purposes.'"). That is all defendants did; the decision merely denied that the religious use tax exemption applied to the hospitality house; and such a decision does not violate plaintiff's free exercise rights. *See, e.g., Wis. Evangelical Lutheran Synod*, 125 Wis. 2d at 554, 373 N.W.2d at 84 ("We conclude that a determination denying a tax exemption is similarly not a violation of the religion clauses of the federal constitution.").[8]

---

[7] With regard to the constitutional claims, some, if not all, defendants assert what appear to be meritorious defenses based on qualified immunity, legislative immunity and lack of personal involvement. None of those arguments need be addressed, because plaintiff has failed to establish a free exercise claim against anyone.

[8] Plaintiff contends that the holding in *Wisconsin Evangelical Lutheran Synod*, does not apply here because the taxing authority was merely imposing acreage limitations under § 70.11(4) and not purporting to determine whether a specific use was "religious." While acreage limitations were central to the city's denial of the Synod's request to be tax exempt in *Wisconsin Evangelical Lutheran Synod*, the city still had to determine whether the Synod's uses were religious or educational before knowing which acreage limitation applied. 125 Wis. 2d at 551, 373 N.W.2d at 83. In fact, before the Synod's uses were found to be

Defendants, and all municipalities for that matter, must determine whether a tax exemption applies regardless of an entities subjective reasons for the use.  *See, e.g., Dykema*, 666 F.2d at 1100 (determination of tax exemption must be made without "any subjective inquiry with respect to religious truth which would be forbidden by the First Amendment").  Here, the City Assessor, defendant Mark Schlafer, undertook a detailed scrutiny of the "actual use of the property."  (Schlafer Aff., dkt. #19, ex. 11.)  Plaintiff fails to provide any evidence from which a fact-finder could determine that defendants inquired into the merits or truth of plaintiff's religious doctrines or practices.  That providing shelter to the needy is a fundamental teaching at Asbury Church was never disputed or labeled "non-religious." Regardless of the sincerity of plaintiff's belief that the operation of the hospitality house is a ministry, however, defendants are permitted to decide for tax purposes that it was more appropriately treated as a benevolent use, rather than exclusively religious use, at least for purposes of Wisconsin's statutory tax exemption statute.[9]

"Put simply, saying one's purpose is exclusively religious doesn't necessarily make it

_____

"religious and educational," it was initially denied the exemption because the city's assessor determined that some of the properties were being used for "housing."  *Id.* at 553, n.8, 373 N.W.2d at 84, n.8.  Despite such determinations, the appellate court found that the city had not been attempting to "define the Synod's ministry or make determinations of religious dogma."  *Id.* at 553, 373 N.W.2d at 84.  Thus, the Wisconsin Court of Appeals decided in *Wisconsin Evangelical Lutheran Synod* that (1) unless there is evidence of government action that amounts to meddling in a party's religion, the government action does not violate the religious clauses of the Constitution; and (2) determining whether a church or religious organization is entitled to a tax exemption, in general, does not require such meddling.

[9] Defendants' decision makes sense in light of the fact that the two other examples of hospitality houses Asbury itself provided the City Assessor are sponsored by non-religious groups providing benevolent services.  Besides Asbury being a church, there appear no significant differences between the services provided by any of the three hospitality houses.

so." *Living Faith, Inc. v. Comm'r of Internal Revenue*, 950 F.2d 365, 372 (7th Cir. 1991) ("While we agree with Living Faith that an organization's good faith assertion of an exempt purpose is relevant to the analysis of tax-exempt status, we cannot accept the view that such an assertion be dispositive."). While to plaintiff sheltering the needy is an action that springs solely from its religious doctrines -- a belief unchallenged by any of the defendants -- its subjective beliefs are largely irrelevant for tax exemption purposes. The actual, objective use of the property is what matters, and using a home to shelter those in need, without something more (*e.g.*, religious services, prayer meetings, Bible reading, etc.) appears more benevolent, than religious, or at least defendants acting in good faith may so find.

Of course, plaintiff's religious freedom claims suffers from an even more fundamental defect: it can prove no injury. As previously explained, Ashbury did not lose its exemption for the 2008 tax year because the property was deemed to have a benevolent, rather than a religious use; it lost the tax exemption because it was being used for *neither* purpose. Indeed, it was being used for *no* purpose -- standing vacant for the better part of a year.

To the extent that the church is challenging the denial of the religious exemption for 2009 and beyond, it can show no harm so long as its property remains exempt for other reasons. Accordingly, defendants are entitled to summary judgment on plaintiff's freedom of religious exercise claims.

III. **Due Process**

Finally, plaintiff contends that it was denied due process because it never had an

23

opportunity to be heard by an impartial arbiter.  (Plt.'s Br., dkt. #29, at 22.)  Though not entirely clear, the court understands plaintiff to argue that Ashbury was due an evidentiary hearing by an independent judge to determine its entitlement to the tax exemption sought and denied for the 2008 tax year.  Any even arguable process plaintiff is entitled to regarding the unlawful imposition of taxes, it may receive, and in fact has now received, through formal notices and elaborately-layered hearings before the City of La Crosse's varied committees and ultimately council and by filing its claim in court under Wis. Stat. § 74.35.

When plaintiff was denied the exemption it sought, Ashbury exercised its statutory right to file with the City's Clerk a claim challenging the assessment of taxes.  Wis. Stat. § 74.35(2).  As the undisputed facts establish, plaintiff received ample process before the City of LaCrosse--plaintiff's appeal of the tax was addressed at six separate meetings of different City committees, plaintiff was able to present its side of story, through witness testimony, as well as documentary evidence, and in the end plaintiff's attorney was present and given an opportunity to speak at several of the meetings.

After being repeatedly heard and ultimately denied relief by the City, plaintiff had the right to commence the current action in court.  Wis. Stat. § 74.35(3)(d).  Because plaintiff exercised this right to *de novo* judicial review, it has now received all possible (if not excessive) due process.  In *Wisconsin Evangelical Lutheran Synod*, a case brought under the predecessor to the current statute for recovery of unlawful taxes, plaintiff argued that its due process rights were violated because it was never given a hearing before being denied a tax exemption.  The Wisconsin Court of Appeals denied the claim, explaining that "[s]ince the

24

Synod is given its right to judicial review in this action, we conclude that there has been no denial of due process." 125 Wis. 2d, at 547, 373 N.W.2d at 81.

Plaintiff noted it is "bewilder[ed]" by defendants' argument that these judicial proceedings satisfy plaintiff's rights to due process, even though defendants seek to have the case terminate at summary judgment before any "hearing" has taken place. (Plt.'s Br., dkt. #29, at 23-24.) To clear up any confusion, these court proceedings, including the summary judgment process, provided plaintiff with ample opportunity to create a factual record and have its rights to relief under those facts and the law decided by an impartial tribunal.

"[T]he hallmarks of procedural due process are notice and an opportunity to be heard." *Pugel v. Bd. of Tr. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). When defendants filed their summary judgment motion, plaintiff received notice and was given an opportunity to be heard by presenting evidence. *See*, *e.g.*, *Eberts v. Goderstad*, 569 F.3d 757, 766-67 (7th Cir. 2009) ("As we have said many times before, a motion for summary judgment requires the responding party to come forward with the evidence that it has -- it is the put up or shut up moment in a lawsuit." (internal quotations omitted)). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal quotations omitted). Summary judgment has provided plaintiff with the procedural protections necessary to insure that its side of the case was heard.

Plaintiff's failure to present sufficient evidence or law to defeat defendants' motion for summary judgment does not entitle plaintiff to an evidentiary hearing. It entitles

defendants to summary judgment.  And so plaintiff's due process claim fails as well.

ORDER

IT IS ORDERED that:

(1)    Plaintiff's motion for leave to file a sur-reply (dkt. #34) is DENIED.

(2)    Defendants' motion for summary judgment (dkt. #14) is GRANTED.

(3)    The clerk is directed to enter judgment in favor of defendants.

Entered this 23rd day of August, 2010.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge